UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 14-3086-Simonton

UNITED STATES OF AMERICA

vs.

DOROTHY JOHN and
SOHAIL SHEIKH,

        Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
MICHAEL N. BERGER
ASSISTANT UNITED STATES ATTORNEY
Court No.: A5501557
99 N. E. 4th Street
Miami, Florida  33132-2111
TEL (305) 961-9445
FAX (305) 536-4699

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 14-3086-Simonton |
| DOROTHY JOHN and | ) | |
| SOHAIL SHEIKH, | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 22, 2014 - July 23, 2014__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1029(a)(2) | Use of Unauthorized Access Devices |

This criminal complaint is based on these facts:
See Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Geoffrey Goodwin, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 09/04/2014

_____
*Judge's signature*

City and state: Miami, Florida

Andrea M. Simonton, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Geoffrey Goodwin, being duly sworn, depose and state the following:

1. I am employed as a special agent with Homeland Security Investigations ("HSI") and have been so employed since January 2010. As a special agent, my duties include conducting investigations involving possible criminal violations of Federal laws, particularly those laws located in Titles 8, 18, and 21 of the United States Code.

2. This affidavit is submitted in support of a criminal complaint against Dorothy John and Sohail Sheikh. I submit that there is probable cause that John and Sheikh have committed violations of Title 18, United States Code, Section 1029(a)(2) (use of unauthorized access devices to obtain $1,000 or more).

3. This affidavit is based on my own investigation and review of documents and records and information obtained from other law enforcement officers and individuals. Because this affidavit is submitted solely for the purpose of establishing probable cause for the criminal arrest of John and Sheikh, I have not included each and every fact known to me concerning this investigation.

## BACKGROUND

4. HSI, along with several other law enforcement agencies, has been investigating a growing and pervasive scam for the past several months. Based on our investigation, and information received from other agencies, the scam appears to work as follows.

- *The Scam*: Persons working in call centers in India (the "scammers") contact American citizens (the "victims") pretending to be from various U.S. government or judicial agencies (such as the Internal Revenue Service or the U.S. Attorney's Office). The scammers falsely and fraudulent tell the victims that they have a tax

lien or have committed a crime and must pay a sum of money. These scammers then tell the victims to make a payment to the purported government agency via a Moneypak.[1]

- *The Money Laundering*: Operators of the call centers have various runners throughout the United States who obtain and launder the fraudulent proceeds. The money from the Moneypak is transferred onto a pre-paid debit card.[2] These runners withdraw funds from the pre-paid debit cards that have been loaded with proceeds of fraud. Typically, the runners will purchase money orders and then cash those money orders into specified bank accounts. The money will then flow out of the bank account in various ways (e.g., wire transfers, bitcoin purchases, etc.). Law enforcement estimates that this is a multi-million dollar scam.

## DETAILS OF INVESTIGATION

5. In late November 2013, an individual named "D.S." contacted the U.S. Attorney's Office in Miami to complain about potential fraud. I spoke with D.S. who relayed the following information.

6. D.S. advised that he/she had received a call from a Ramon Jones purportedly with the Attorney General's Office who claimed that D.S. was going to be charged with fraud and that D.S. must pay $750.00 to avoid being charged. D.S. asked Jones for more information and a second individual Eton Morgan advised D.S. that Mr. Morgan worked with the Miami Attorney General's Office and that D.S. owed money to Cash Credit Services.

---

[1] Moneypak works as follows. An individual can load cash onto a Moneypak card up to $500. The money can then be transferred from the Moneypak onto a pre-paid debit card through the use of a sequence of numbers. See, e.g., https://www.moneypak.com/FAQ.aspx.

[2] A pre-paid debit card must be registered to a real person's name in order to be activated and accept funds. These cards can be registered online with a person's name, date of birth, and Social Security. In this scam, these cards are loaded using stolen personal identity information.

7. D.S. agreed to make a good-faith payment until D.S. could investigate the situation further. Morgan told D.S. to purchase a Green Dot Moneypak card at a drug store. Morgan told D.S. that he/she had two hours to make the payment. D.S. purchased a Moneypak for $150.00 and provided the bar code sequence for the card to Morgan. D.S. asked Morgan for confirmation and Morgan provided a tracking number, confirmation number, and the address of the U.S. Attorney's Office in Miami (99 NE 4th Street, Miami, Florida 33132).

8. I subsequently obtained a subpoena to track the funds from this Moneypak. The response revealed that these funds were loaded onto a pre-paid debit card. This card was subsequently used at a Walmart in Miami, Florida. On December 5, 2013, I traveled to the Walmart and obtained video footage showing a female making money order purchases using the card and later entering a yellow minivan registered to Sohail Sheikh. Walmart personnel advised that both this woman and this man frequently came to make money order purchases using pre-paid debit cards.

9. On that same day, Walmart personnel contacted me to advise that this woman was conducting additional money order transactions. Walmart personnel showed us a recording and transaction records indicating that the women had purchased two (2) money orders for $1,000 each using a pre-paid debit card. Law enforcement subsequently conducted a traffic stop and identified the driver as Sohail Sheikh and the passenger as Dorothy John. Both individuals, John in particular, appeared nervous.

10. On December 19, 2013, HSI agents conducted surveillance of Sheikh's yellow minivan. Agents began surveillance early in the morning. Agents observed the following events on that day:

- 10:55 AM: Sheikh picked up John in Miami Springs, Florida and drove to a Walmart located in Hialeah, Florida.

3

- 11:32 AM: An HSI agent observed John conduct a financial transaction at the Walmart (later determined to be the purchase of money orders with a pre-paid debit card). Sheikh and John subsequently left this Walmart.

- 12:30 PM: Sheikh and John arrived at a second Walmart located in Pembroke Pines, Florida. Sheikh parked the vehicle at the extreme east end of the Walmart lot.

- 12:44 PM: An HSI agent observed John enter this Walmart and conduct a financial transaction (later determined to be the purchase of over $1,000 in money orders with a pre-paid debit card).

- 1:50 PM: An HSI agent observed Sheikh enter the Walmart and conduct a financial transaction (later determined to be the purchase of $990 in a money order with a pre-paid debit card).

- 2:04 PM: An HSI agent observed John re-enter this Walmart and conduct a financial transaction (later determined to be the purchase of a $499 in a money order with a pre-paid debit card).

- 3:30 PM: Sheikh and John traveled to a Bank of America located in Pembroke Pines. Agents observed Sheikh enter the Bank of America.

11.     On June 17, 2014, law enforcement obtained a tracker warrant for Sheikh's yellow minivan. Over the next several months, law enforcement has been monitoring the vehicle; and, based on travel history and subpoenas to retail stores, supermarkets and banks, observed the following pattern of activity. Sheikh and John would purchase pre-paid debit cards from pharmacies, dollar stores, or other locations. The pre-paid debit cards would subsequently be loaded with fraudulent funds.[3] Sheikh and John would then use the pre-paid debit cards to purchase money orders at supermarkets or other locations. Subsequently, Sheikh and John would deposit the money orders into various bank accounts, typically not their own bank account. Law enforcement obtained a sample of the videos and transaction records from these establishments and it revealed more than $37,000 in pre-paid debit card money order purchases by John and Sheikh in late June 2014 and July 2014.

---

[3]     The debit card company (Green Dot bank) is located in California. Any point-of-sale purchase in Florida would therefore necessarily involve an interstate communication.

4

12. On June 25, 2014, law enforcement tracked Sheikh and John to a Winn Dixie in Hialeah, Florida. Sheikh attempted a financial transaction involving a Green Dot pre-paid debit card ending in 8349. Agent Chad Steinberg from the office of the Department of Treasury, Inspector General for Tax Administration ("TIGTA") posed as a Winn Dixie Asset Protection Manager. Steinberg met with Sheikh and asked him about the pre-paid debit. This particular card was registered to an "M.G." from Hawaii, according to Green Dot. Steinberg advised Sheikh that it is a violation of law to use debit cards without authorization of the person in whose name the card is registered. Steinberg asked Sheikh to identify in whose name this card was registered. Sheikh stated that he did not know. Steinberg advised Sheikh that the card was registered to "M.G." Sheikh subsequently claimed that "M.G." worked for his "company." Sheikh handed his phone to Steinberg and a person posing as "M.G." with an Indian accent spoke to Steinberg.[4]

13. On July 10, 2014, law enforcement tracked John to a Navarro pharmacy in Miami. John attempted to make a money order purchase using a Green Dot pre-paid debit card ending in 1440. Navarro loss prevention manager subsequently called me. I called Green Dot and confirmed that the card was registered to "C.L." in North Carolina. Navarro loss prevention manager put me on the phone with John.

14. On that same day, I (posing as a Green Dot representative) spoke on the phone with John. John confirmed that she had used Green Dot cards before and that she knew the cards must be registered in a real person's name. John advised that she did not know that she could not use a Green Dot card in someone else's name. I asked if John knew "C.L." John stated that she did not know that this Green Dot card was in someone else's name and simply bought the card at

---

[4] Law enforcement spoke to the real "M.G" who confirmed that he/she had not authorized this debit card registered in his/her name.

5

a Dollar Store. I told John that it is a violation of law to use debit cards without authorization of the person in whose name the card is registered.

15. On July 22, 2014, Sheikh and John went to a Winn Dixie in South Florida where they had tried to purchase money orders. An HSI undercover agent ("UCA") approached John and Sheikh in the parking lot of a Winn Dixie in Hialeah. In an undercover recorded meeting, the UCA advised John and Sheikh that he worked in Winn Dixie loss prevention. The UCA advised John and Sheikh that the UCA had observed both individuals engage in a lot of pre-paid debit card activity at the Winn Dixie. The UCA told both John and Sheikh that the UCA confirmed with Green Dot that all of the money on the cards was fraudulent. Sheikh specifically told the UCA that since he now knew the activity constituted fraud that Sheikh would no longer engage in this activity.

16. Subsequent to this meeting, on July 22 and July 23, 2014, based on video transactions and financial records, Sheikh used pre-paid debit cards to purchase money orders totaling more than $1,000 from a Walmart and Sedano's in Hialeah. Similarly, after this meeting, based on video transactions and financial records, John used pre-paid debit cards to purchase money orders totaling more than $1,000 from a Walmart in Hialeah on those dates.

17. On September 3, 2014, law enforcement interviewed John. In a post-<u>Miranda</u> statement, John told law enforcement that her sister recruited her to engage in this activity. John stated that she believed the activity was illegal. She stated she was always nervous every time she used the debit cards. John stated that Sheikh also believed the activity was illegal and that they had planned to get out of the business in April or May of 2014 because of their concerns. John estimated that she had used pre-paid debit cards to purchase $5,000 in money order

purchases a day for six days a week since November 2013 (this roughly amounts to $900,000 in money order purchases from November 2013 to July 2014).

## CONCLUSION

18. Based on the foregoing, I have probable cause to believe that, between July 22, 2014 and July 23, 2014, in Miami-Dade County, in the Southern District of Florida, John and Sheikh have committed violations of Title 18, United States Code, Section 1029(a)(2) (use of unauthorized access devices to obtain $1,000 or more).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Geoffrey Goodwin
Homeland Security Investigations

Sworn to and subscribed before
me this 4th day of September, 2014

_____
Andrea M. Simonton
United States Magistrate Judge